IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

KERRY D. ROBERTSON,

   Plaintiff,

   v.

JO ANNE B. BARNHART, Commissioner of Social Security,

   Defendant.

CASE NO. 04-5712RBL

REPORT AND RECOMMENDATION

Noted for September 30, 2005

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Magistrates Rule MJR 4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  Plaintiff, Kerry D. Robertson, brings this action, appealing the denial of his application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act. See 42 U.S.C. §§ 1381-83f.  This matter has been fully briefed.  After reviewing the record, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, Kerry Robertson, was 33 years of age at the time of the administrative hearing.  He graduated from high school, and he has past work experience as a cook, certified welder, plumber's

REPORT AND RECOMMENDATION - 1

helper, and nurse's aide. He alleges he became disabled on or about August 2, 1997, due to degenerative joint disease, back pain, depression, anxiety, and attention deficit hyperactivity disorder.

Plaintiff filed an application for SSI benefits on August 10, 1999. Plaintiff's application was denied initially, on reconsideration, and by an ALJ, on July 7, 2001. Plaintiff appealed to the Appeals Council, which on August 15, 2002, reversed and remanded Plaintiff's denial giving Plaintiff an opportunity for another hearing. The second hearing was held on September 30, 2003, and in a decision dated February 4, 2004, the ALJ denied the application. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner.

**DISCUSSION**

The Court may set aside the Commissioner's denial of Social Security disability benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. 42 U.S.C. §405(g); Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). We consider the evidence as a whole, weighing both evidence that supports, and evidence that detracts from the Commissioner's conclusion. Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996). Credibility determinations are the province of the ALJ. Fair v. Bowen, 885 F.2d 597, 603 ( 9th Cir. 1989).

**Sequential Evaluation Process**

The claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. § 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §416.905.

REPORT AND RECOMMENDATION - 2

In evaluating Plaintiff's claim, the ALJ followed the five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security regulations. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920 (2000). The Plaintiff has the burden of proof at steps one through four; at step five the burden shifts to the Commissioner to show that Plaintiff can perform work that exists in significant numbers in the national economy.

**Findings of Administrative Law Judge**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date (Tr. 15, 23, Finding 1). See 20 C.F.R. § 416.920(b). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; anxiety disorder; and major depressive disorder (Tr. 16, 23, Finding 2). At step three, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of a listed impairment (Tr. 19, 23, Finding 3). The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform work which does not require lifting and carrying more than twenty pounds occasionally and ten pounds frequently; sitting more than six hours in an eight-hour day with the sit/stand option and more than occasional stooping and crouching; is able to perform and follow three step instructions; is limited to little or no public interaction; and should have limited interaction with supervisors and coworkers (Tr. 20-21, 23-24, Finding 5). At step four, relying in part upon vocational expert testimony, the ALJ found that Plaintiff was unable to perform his past relevant work (Tr. 22, 24, Finding 6). At step five, again relying upon vocational expert testimony, the ALJ found that a person with Plaintiff's RFC and vocational profile could perform a significant number of jobs in the national economy, represented by data entry clerk; night guard; and cleaner (in PM only) (Tr. 23, 24, Finding 11). Thus, the ALJ found Plaintiff not disabled (Tr. 24, Finding 12).

Plaintiff alleges the following errors:1) the ALJ failed to properly consider the opinions of Plaintiff's treating physician; 2) the ALJ improperly rejected the opinions of Plaintiff's examining

REPORT AND RECOMMENDATION - 3

physicians; 3) the ALJ erred in credibility assessment of Plaintiff and Plaintiff's girlfriend; 4) the ALJ erred in her RFC assessment; and 5) the ALJ erred in her first hypothetical posed to the Vocational Expert.

### A. THE ALJ PROPERLY EVALUATED THE MEDICAL EVIDENCE

Whether a medical source's opinion will be given significant weight depends on such things as the length of the examining relationship; treatment relationship including the nature and extent of the treatment relationship; the degree to which the treating source's opinion is supported by medical signs and laboratory findings; and its consistency with the rest of the evidence. See 20 C.F.R §§ 404.1527(d), 416.927(d). The ALJ may reject the contradicted opinion of a treating or examining physician by stating specific and legitimate reasons, and reject the uncontradicted treating or examining physician opinion by providing clear and convincing reasons, supported by substantial evidence in the record. Holohan v. Massanari, 246 F.3d 1195, 1202-03 (9th Cir. 2001).

Plaintiff objects to the ALJ's assessment of the medical source testimony presented by Robert Rozendal, M.D., Plaintiff's treating physician, and the following examining physician's opinions: Lynn L. Staker, M.D. Donnna E. Moore, M.D. and Daniel M. Neims, Psy.D.

*(i) Dr. Rozendal*

Here, the ALJ gave little weight to Dr. Rozendal's reports specifically because they were "done in check block format, and predicated in secondary gain context" (Tr. 21). These check box reports did "not contain significant explanation of the bases for the conclusions" (Tr. 21). The ALJ clearly stated her preference for individualized medical opinions over Dr. Rozendal's check box reports.

Specifically, the ALJ considered and accorded weight to the opinions of the reviewing state Agency medical sources (Tr. 21). Dr. Johnston reviewed the record and opined that Plaintiff had only slight restrictions in activities of daily living; moderate difficulties in maintaining social

REPORT AND RECOMMENDATION - 4

functioning; slight deficiencies of concentration, persistence, or pace; and only one or two episodes of deterioration (Tr. 163-74). Dr. Hoskins found Plaintiff could occasionally lift twenty pounds; frequently lift ten pounds; stand and/or walk for about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and was occasionally limited in ability to stoop (Tr. 180-87). The conclusions of Dr. Hoskins are consistent with the conclusions of Dr. Moore, who concluded in March 1999 that "work, such as on a computer, would be appropriate" for Plaintiff (Tr. 136). Dr. Moore opined that Plaintiff would be able to function standing "15 minutes at a time and stand[ing] intermittently throughout the day" and that "he can sit continuously as long as he takes breaks and has the right seating position" (Tr. 136). Dr. Moore also considered Plaintiff's mental impairments (depression and ADHD) and concluded that "these conditions will not present a problem" since Plaintiff has "not had interpersonal problems related to his ADHD and has never been fired from a job" (Tr. 136). Thus, the ALJ properly gave greater weight to the opinions of the state Agency physicians than to Dr. Rozendal's unsupported checkbox reports.   The court also notes the ALJ's RFC finding accounted for those limitations assessed by Dr. Rozendal that were supported by objective examination. Specifically, Dr. Rozendal's observations that Plaintiff ambulated slowly and with pain or while limping were accounted for in the ALJ's RFC determination. The ALJ's RFC specifically accounted for Plaintiff's walking and standing limitations by requiring a sit/stand option, as was consistent with Dr. Moore's opinion (Tr. 23).

   *(ii) Dr. Staker*

   Plaintiff argues the ALJ "*sub silentio* rejected Dr. Staker's opined limitation fo half-time sedentary work..." (Pl.'s Opening Br. At 17). Plaintiff mistakenly asserts that Dr. Staker opined a limitation of half-time sedentary work. Plaintiff relies on the inexact language in the check-box form. Dr. Staker's report does not state that Plaintiff is limited to "half-time sedentary work," but rather, Dr. Staker's assessment of sedentary work answers the following question: "Answers to the following questions are based on how the person's medical condition(s) affects his or her overall

REPORT AND RECOMMENDATION - 5

residual ability to perform at least half-time in a normal day to day work setting" (Tr. 133). Accordingly, the ALJ's assessment that Dr. Staker opined Plaintiff could perform sedentary work is one possible interpretation of an ability to work "at least half-time."

Moreover, Dr. Staker opined that Plaintiff's limitation to sedentary work would last only thirty weeks, far less than the 52 weeks required to establish disability. Thus, Dr. Staker's report cannot support a finding of disability.

### *(iii) Dr. Moore*

Plaintiff's contends that the ALJ erred in not considering and including Dr. Moore's opinion limiting Plaintiff to standing for only 15 minutes. Plaintiff's assertion is without merit. Dr. Moore opined that Plaintiff would be able to function standing "15 minutes at a time and stand[ing] intermittently throughout the day" and "can sit continuously as long as he takes breaks and has the right seating position" (Tr. 136). The ALJ's RFC allows for a sit/stand option, accounting for Plaintiff's need to limit his standing during an eight-hour workday (Tr. 23-24, Finding 5). The ALJ's RFC is fully consistent with Dr. Moore's opinion.

### *(iv) Dr. Neims*

Plaintiff argues that the ALJ did not properly reject several reports presented by Dr. Neims (Pl.'s Opening Br. at 18-19). The record before the ALJ consisted of four psychological evaluations by Dr. Neims: May 2000 (Tr. 176-79); May 2001 (Tr. 239-42); April 2002 (Tr. 333-39); and March 2003 (Tr. 340-46). Here, the ALJ noted the conflict between Dr. Neims' severe assessment in the mental status examination compared with his own reports which were almost completely normal (Tr. 21). The ALJ noted these inconsistencies, but incorporated into her RFC determination Plaintiff's limitations defined as marked by Dr. Neims. Dr. Neims opined that Plaintiff was markedly limited in his ability to (1) exercise judgment and make decisions; (2) interact appropriately with public contacts; and (3) respond appropriately to and tolerate the pressures and expectations of a normal work setting (Tr. 241, 335, 342). The ALJ's RFC determination accounted for these limitations by

REPORT AND RECOMMENDATION - 6

limiting Plaintiff to work which does not exceed his ability to perform and follow three step instructions; is limited to little or no public interaction; and has limited interaction with supervisors and coworkers (Tr. 23-24, Finding 5). These limitations are consistent with the psychological assessments of Dr. Neims as well as the assessments of Dana Myers, Psy.D. (Tr. 317-21). In April 2003, Dr. Myers also assessed Plaintiff with a marked limitation in ability to interact appropriately with the general public, but noted Plaintiff had moderate ability to understand, remember and carry out detailed instructions; to make adjustments on simple work-related decisions; and to respond appropriately to the pressures in a usual work setting and in his ability to respond appropriately to changes in the work setting (Tr. 317-21).

In sum, the ALJ's assessment of the medical evidence is supported by substantial evidence and free of legal error.

**B.    THE ALJ PROPERLY DISCREDITED PLAINTIFF'S AND PLAINTIFF'S GIRLFRIEND'S TESTIMONY AND COMPLAINTS OF TOTAL DISABILITY**

Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority on evaluating plaintiff's subjective complaints. Bunnell requires the ALJ findings to be properly supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)). An ALJ may reject a claimant's subjective complaints, if the claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in Fair v. Bowen, *supra*, and Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a work environment where it might be impossible to rest periodically. Similarly, the ALJ can reject the

REPORT AND RECOMMENDATION - 7

testimony of lay witnesses only if s/he gives reasons germane to each witness whose testimony s/he rejects.  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) Dodrill v. Shalala, 12 F.3d  915, 919 (9th Cir. 1993).

In the case at hand, there is evidence of malingering. Clinical psychologist, Michael Corpolongo, Ph.D., opined in 1999 that Plaintiff's scores during psychological testing suggested the possibility of malingering or exaggeration of symptoms (Tr. 146).  The ALJ found "the claimant's allegations regarding his limitations are not totally credible..."  (Tr. 23).

The ALJ noted that Plaintiff only worked sporadically prior to his alleged disability onset date, concluding that this raised questions as to whether Plaintiff's continuing unemployment was actually due to medical impairment (Tr. 20).  The ALJ noted inconsistencies between the testimony of Plaintiff and his girlfriend.  The ALJ found it was inconsistent for Plaintiff and his girlfriend, Christine Lynette Weaver, to assert that Ms. Weaver took care of all Plaintiff's daily household activities despite her condition of disability, which the ALJ found belied either Plaintiff or Ms. Weaver's allegations of disability (Tr. 19). The ALJ also found inconsistency that Plaintiff lacked current treatment for his back problem, despite his allegations of disabling pain (Tr. 19-20).  Dr. Bright opined that Plaintiff "would benefit from interventional pain management techniques" (Tr. 278). This assessment is further confirmed by the opinion of Christopher C. Kain, M.D., who opined that Plaintiff "had a 70% chance of improving and a 30% chance of no improvement" with proper workup for his back pain (Tr. 285). Dr. Kain noted that Plaintiff "was not really interested in pursuing workup with these odds" (Tr. 285). Here, the ALJ did not fault Plaintiff for electing not to pursue this treatment, but rather assessed the credibility of Plaintiff's subjective allegations of disabling pain in context of Plaintiff's choice to forgo treatment for that pain.

The ALJ also found Plaintiff's activities of daily living were contrary to his allegation of disability, noting that Plaintiff made extensive use of his computer, watched television, read, shopped, and provided for his own daily care (Tr. 20).  Plaintiff's activities also included fishing and

REPORT AND RECOMMENDATION - 8

1  camping (Tr. 20). The ALJ's assessment of Plaintiff's daily activities is supported by the findings of
2  Dr. Neims, who repeatedly found that Plaintiff had no more than mild limitations in hygiene;
3  grooming; cooking; shopping; household chores; maintenance; and financial management (Tr. 339,
4  346).
5        The ALJ also found Plaintiff incredible based on Plaintiff's statement that if he returned to
6  work he wanted more than minimum wage (Tr. 20). Plaintiff responds that this comment was taken
7  out of context and that everyone wants more than minimum wage (Pl.'s Opening Br. at 22).
8  However, Plaintiff removes this comment from its full context. Plaintiff did not simply assert an
9  interest in attaining wages greater than minimum wage, but indicated he had little interest in jobs
10 procured for him by the Department of Vocational Resources because they were "paying him too
11 little" or did not turn into a permanent job (Tr. 351). The ALJ also noted that Plaintiff was seeking
12 work in 2003, concluding that this suggested that Plaintiff's inability to obtain work rather than an
13 inability to perform work was the motivation behind Plaintiff's current application for disability
14 benefits (Tr. 20).
15       Accordingly, the ALJ properly discredited Plaintiff's subjective allegations of total disability.
16 The ALJ's credibility determination is supported by clear and convincing reasons, based on
17 substantial evidence, and free of legal error.
18 *C. THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY AND STEP FIVE FINDINGS WERE PROPER*
19       If the ALJ cannot determine whether a claimant is disabled based on a claimant's current
20 work activity or on medical facts alone, and a claimant has a severe impairment(s), a review is made
21 of the claimant's residual functional capacity ("RFC") and the physical and mental demands of the
22 work a claimant did in the past. 20 C.F.R. § 404.1520(e). At step-five the burden of proof shifts to
23 the Commissioner to produce evidence of other jobs existing in significant numbers in the national
24 economy that Plaintiff could perform in light of his age, education, work experience, and residual
25 functional capacity. *See* Tackett v. Apfel, 180 F.3d 1094,1099 (9th Cir. 1999); Roberts v. Shalala, 66
26 REPORT AND RECOMMENDATION - 9

F.3d 179, 184 (9th Civ. 1995).  In <u>Tackett</u>, the court noted "there are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." <u>Id</u>.

As noted above Plaintiff argues the ALJ erred when determining Plaintiff's RFC and further erred when she posed the first hypothetical to the vocational expert.  After reviewing the record, the court is not persuaded by either argument.

Plaintiff's RFC argument is based on the premise that the ALJ failed to properly consider the medical evidence and the testimony of Plaintiff and Plaintiff's girlfriend.  As discussed above, the ALJ properly evaluated the medical source evidence and credibility issues contested by Plaintiff.  Accordingly, Plaintiff's RFC is properly supported by the record and this Court should uphold her decision.

With respect to the hypothetical questions posed to the Vocational Expert, the ALJ presented two hypotheticals to the vocational expert with the second hypothetical including Plaintiff's alleged need to lie down during the work day (Tr. 488-89).  The vocational expert testified that lying down would preclude all employment (Tr. 489). Plaintiff asserts that the ALJ should have accepted vocational expert's response to this second hypothetical to find him unable to perform any work.  However, no doctor opined Plaintiff needed to lie down and the ALJ found Plaintiff's alleged need to lie down not credible.  Accordingly, the ALJ properly declined to rely upon the second hypothetical.  Plaintiff also asserts that he could not perform the jobs identified by the vocational expert. Plaintiff asserts he cannot perform the job of night cleaner because this job is defined as "a heavy job" in the Dictionary of Occupational Titles (DOT) (Pl.'s Opening Br. at 24). However, the vocational expert specifically accounted for Plaintiff's limitations. The vocational expert testified that ten percent of the night cleaner jobs were light work: "no supervision and very light vacuum, dust, pick up a ten – not even a ten pound waste basket" (Tr. 488). The vocational expert testified

REPORT AND RECOMMENDATION - 10

that after this ten percent reduction, there remained 4,000 jobs locally and 160,000 jobs nationally (Tr. 488). Accordingly, under the ALJ's RFC determination, Plaintiff is able to perform this job.

## CONCLUSION

The Commissioner 's decision is supported by substantial evidence in the record and free of legal error.  Accordingly, the decision of the Commissioner is AFFIRMED.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **September 30, 2005**, as noted in the caption.

DATED this 15th day of September, 2005.

>    */s/ J. Kelley Arnold*
>    J. Kelley Arnold
>    U.S. Magistrate Judge

REPORT AND RECOMMENDATION - 11